The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. We're happy to hear argument in Saunders v. Metropolitan Property Management. Mr. Grimes? Thank you, Your Honor. Good morning. I don't know whether I got lucky and drew the only argument in this courtroom this morning or you got lucky and have the only argument in this courtroom. We'll all soon know, right? May it please the Court, this case comes to you on summary judgment from the Western District of Virginia. There are two issues. One concerns summary judgment. The other concerns default judgment. I will address each in turn. If a company tells an employee we're letting you go because you're late to work on Tuesdays and your office is messy and you don't get your paperwork in on time, and because you're black or a woman or Jewish, that case goes to a jury every time. That's this Court's opinion in Hill v. Lockheed Martin, 354 F. 3rd, 277, as applied by the Eastern District of Virginia, for example, in Conyers v. Virginia Housing Authority, 2012, U.S. District, Lexus, 134908. This Court said in Hill, we're letting you go, that it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons to state a cause of action. And the Conyers Court, and that Court also cited, this Court cited 42 U.S.C. section 2000 E2M, and the Conyers Court said a plaintiff seeking to establish unlawful employment discrimination need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail as long as it was a motivating factor. In other words, it matters not, therefore, that one or two or three or six of the reasons are permissible reasons as long as one of the reasons is an impermissible reason. That violates federal law. That's exactly what we have here. So when the company came to town on November 4, 2015, Saunders told them that she was being sexually harassed by the who had put on her computer keyboard this Post-it. I think we've all seen the Post-it. Which, I won't repeat the words. They're offensive. So let's leave it at that. But that's what she should have come forward earlier. She should have come forward earlier. How long did she wait to come forward? At least several months. At least several months. How many several? I think this was in November. I think the harassment started in January. So that's whatever the math is. Nine months. But the problem here is not what the company did before it's charged with knowledge of sex harassment. The problem is what the company did after it had knowledge of sex harassment. But Mr. Grimes, where is the basis in the evidence? I understand your case for retaliation based on the company's actions. But where is there a basis for imputing to Metro knowledge of the substance of the sexual harassment complaint? In other words, that there was a problem going on before she reported it. Where is there anything in the record that shows she knew what was going on, that Metro should have known what was going on? Certainly they knew from November 4, 2015 forward, Justice Kenan. The other thing that's in the record is according to the maintenance man, he had complained to the company at least three times that Saunders was sexually harassing him. Now, we don't believe that to be true. Right, but it would have to be a complaint that she was being sexually harassed and there was imputing liability to Metro before the date of her complaint on November 4. And where is that evidence? I just don't see it. Maybe you can help there. No. No, I can't help, Judge Kenan. Before November 4, 2015, there's no evidence that the plaintiff complained about sex harassment. But once it became aware of the sex harassment under a series of Fourth Circuit cases, AMIRMOKRE versus Baltimore Gas and Electric, EEOC versus Cromer Food Services, liability can be imposed. Once the company becomes aware of the harassment and fails to take adequate remedial measures, and that's our argument, our point with respect to that matter either rises or falls based upon whether you find that the company should not have fired her after November 4, 2015. Now, I'm talking only about the fourth element of the hostile work environment claim. As you pointed out, Judge Kenan, the retaliation claim is something separate altogether. But I'm saying that's sufficient with respect to establish a fourth element of a hostile work environment claim. The termination is part of the ongoing harassment. For example, in EEOC versus Cromer Food Services, this Court said in 2011, if the plaintiff is worse off, it is unacceptable as a remedial measure. And AMIRMOKRE, this Court said in 1995, that firing the victim is not an adequate remedy. So either we lose or win with respect to that point, depending upon whether you find that the company should not have fired her after she complained with respect to sex harassment on the Title VII claim. I think the problem with your argument is it goes too far. As soon as you complain about anything, you have immunity from any discipline or firing, according to your theory. No. And that can't be right. No, no, no, no, no. I'm not saying that at all. Okay. Because a jury would still have to find that the improper characteristic, whether it's being black or a woman or Jewish or complaining about harassment, is a motivating factor in the decision to terminate. A jury could find that's not a motivating factor and the plaintiff would lose. No, we're not asking for a silver bullet, if you will, Judge Motz. It still becomes, in our view, a jury question under our jurisprudence with respect to that particular point. And either you accept that proposition of law or you do not. If you do not, we lose on that point. But that's the point that I'm advocating here. So, I mean, the timeline here is important. On that same day she complained of sex harassment, her job was posted on Craigslist. And when we asked the owner... That same day, you're talking about November 14th? Fourth. Fourth. November 4th. Everything we're talking about, Judge King, happened over the course of nine days. The complaint on November 4th, 2015, the immediate suspension, the job was posted on Craigslist and she was fired on November 13th. Everything we're talking about happened over nine days. And that's all retaliation. That's all your case of retaliation, right? It's at least retaliation. I rest on my other point, which is we either win or lose, Judge Keenan. But yes, it is retaliation. You want a trial on the retaliation? We want a retrial on both. And I'll get to default judgment in a moment. I don't want to use all of my time. I don't think I'd waste any of my time on default judgment. Well, you saved me some time just there, Judge Motz. All right. Very well. But when we deposed the owner of the company, we said, why did you post her job on Craigslist on November 4th, 2015? He said, quote, the allegation of sexual harassment. That's direct evidence of discriminatory animus. And we asked him, why did you suspend her on that same day? And he said, quote, due to the allegation of sexual harassment claim that she had on our maintenance tech, Clayton Carter. Okay, because she made a complaint. Is that what you're saying? In answer, because she made an allegation of sexual harassment against Clayton Carter, how can the retaliation claim be any clearer? I see I'm fighting an uphill battle with respect to the fourth element of the hostile work environment claim. I can't say any more than I've already said about that. So I'll let that point rest. And you've told me what your thought process is with respect to that. Well, it's just me. If you think that's a good argument, go forward. Changing gears then and moving quickly to that argument. In our view, Your Honor, with respect to the default judgment claim, confessed negligence is not excusable neglect under our case law. We did everything we could to get the defense to participate. We sent them notices of hearings, though we didn't have to. We suggested they retain local counsel. They said, we don't want to spend the money to hire a local lawyer because we're spending too much money on lawsuits. That can't be excusable neglect under our jurisprudence. And our view is the district court abused its discretion with respect to default judgment. Those are my points. I'm not going to repeat what's written on brief. If you have questions, please ask me. Otherwise, I'll yield the podium. Thank you for your time. May it please the court, good morning. I'm Monica Monday on behalf of Metropolitan Property Management, Incorporated. As in any employment case that this court sees that's decided on summary judgment or after a trial, the record is large and there's lots of finger pointing. So I would like to start my argument by pointing out several critical undisputed facts in the case which we think demonstrate why the district court was correct in granting summary judgment on the substantive claims. First, the plaintiff is the supervisor of the alleged harasser. Second, the first complaint that she made of sexual harassment was in fact 11 months, Judge King, after the harassment allegedly began. And it was also two days after she had received supervisory coaching for poor performance. She admitted that first, this was in fact the first complaint she had ever made. And second, the Metropolitan had no reason to know of any sexual harassment before that time. Next, the alleged harasser then files his own complaint against her alleging that she has been sexually harassing him. The employer does the appropriate thing. It immediately instigates an investigation. It puts both of them on paid administrative leave. It's not a suspension. Additionally, the phone call that took place between, on November 4th. Why did they suspend the victim? Your Honor, they actually put both the, they both were complainants actually. I know you said that. Yes. They treated them both the same. He harassed her and then they suspended them both. They put both on administrative leave, Your Honor. Correct. They treated them both the same pending the outcome of the investigation. Now, wasn't there though evidence that he was offered a transfer and turned it down? There was some evidence of that, Your Honor. It's a disputed fact, but it is not a material fact that would preclude summary judgment. Why wouldn't it be when put together with the other evidence in the case, why wouldn't that be a significant fact? Because Mr. Moore said that they advertised her position on Craigslist because of her, the very day that she made her complaint. They did it because of her complaint. And there's evidence that Carter was treated better than she was treated. So, he wasn't ultimately terminated and she was. So, why wasn't a jury allowed to evaluate that? I think you've raised two issues, Your Honor. So, let me address them each individually. First, with regard to the offer of a transfer. You are correct. The record does suggest there was some evidence that at some point he was initially offered a transfer and then he was not given the  The district court specifically addressed this and said he was, in fact, fired ultimately. And the record fully supports that. You can see it, the joint appendix 707, and at 1545 to 46, and also at 1548. But there was a dispute. Wasn't there a dispute in terms of how he was treated versus how she was treated? I think that there is in that very narrow scope, Your Honor, as it relates to the initial transfer. But one of the significant, and we think the dispositive answer to that one is, is that they were not viewed as being similarly situated. And again, this goes back to the fact that she was the supervisor. And this is what the case law says. This court in Walker v. Modgicraft, for example, a recent decision, there were employees involved in a physical altercation. And the employee took action against, I'm sorry, the employer took action against one, but not the other. And this court held that was okay because the employer did not view them as being similarly situated. Now, in this case... Did that case go to trial or not? That case came on summary judgment, if I recall correctly, Your Honor. I believe that it did. See, that's my problem with this case, Ms. Mundy. You know, you have Mr. Moore saying that the plaintiff was lying, describing her claims as a lie. Too many people just throw around allegations of sexual harassment. They posted her job the day she made a complaint. It just seems to me that this is a quintessential jury question that let the jury decide and decide against her, but at least give her her day in court. Why wasn't she entitled to that? Well, and Your Honor, so that brings me to, I think, the second issue that you raised, which was about posting the job postings. And I think there's a third issue as well, which I'll also address. I think the context is extremely important here because the jobs weren't both jobs. First of all, both jobs were posted immediately. And what happened was, is that on that fateful call on November 4, she wanted to resign. Her initial reaction, she reported the sexual harassment and then she wanted to resign. He talked her out of it. He said, please don't resign. See, I think all those facts, I don't think that they break your case. But what does is your client's testimony in deposition. He says that the filing, the timing of her complaint did not boast her in favor when it came to the final decision. If it was something of that magnitude, that is sexual harassment, he would have expected the corporate office to have learned of the conduct earlier. And Saunders' complaint was also a cause of concern considering the fact that if this was going on, Saunders couldn't communicate something of that importance but can communicate other minor things. You know it's not consistent. He, Mr. Moore, puts all, when asked why he did it, he says it's because of her sexual harassment complaint. Your Honor. I mean, that's your witness. Our witnesses don't, our clients don't always say exactly in deposition what they say to us in private. But that, I don't know how we can get around that. I think that in context, Your Honor, that testimony was relating to the timing of her complaint. And this is part of the relevance of what was going on. She had been twice before disciplined. One was a verbal, one was verbal, one was a write-up earlier in the year and then we come to the third write-up which was two days before the complaint. Now, this is the other important context. So I think what he's talking about is about the timing. There were other, and I want to get to the reasons for the discharge, but there were, it was the timing of the complaint and this is also relevant too. The supervisory coaching happened on November 2nd. That afternoon, Mr. Moore actually emailed her and said, I need you to return the supervisory coaching forms. And she did not. Then the next day, an HR representative contacts her trying to get the signed forms back. She doesn't return it. Then we get to November 4 and Mr. Moore is calling her, asking her for the forms. And so this is the third request at two days after a supervisory coaching for the forms and then all of a sudden, out of the blue, 11 months after she says it began, she complains of sexual harassment. She's also the supervisor on the property. He is her subordinate. So that is the context you're on. I understand that that's your position. Yes. And you can make that argument to a jury. But if your client testifies to this, to what he did in his deposition on the stand, I certainly think you have a jury question. And you can talk about context all you want. But if somebody says, for example, I hate women, and then you say to the judge, well, you really have to put that in context. He had a wicked stepmother and his daughters were mean to him and he never had been able to trust a woman before. And so he didn't mean he really hated all women or the employee here. It just meant that in a general way, he hated women. So you can context it all you want. But you have the language that your client gave in response to direct questions about why he took, why he fired this woman. And, Your Honor, and I don't want to argue with you at all. And I understand exactly what you're saying. I think also, too, he was talking not just about the timing, but when viewed in the context of everything. And so I think it's appropriate for us to turn to the actual investigation, because Mr. Moore, who made those comments, did not perform the investigation. No, his brother did. That's correct. Who was not an investigator. No, Your Honor. And, Your Honor, this is actually a small, this is a small organization. It is not a sophisticated business operation. So they turned to somebody... Is that the reason they let things go into default? Because they were small and didn't care about it? No, Your Honor, I think... What was going on? The District Court found that Metropolitan was relying upon its corporate counsel at that time. And the record fully supports that. And I'd be happy to address that issue as well. So the investigation itself fully supports the District Court's conclusion that this case had boiled down to pretext and could not be shown. And so there were a number of reasons in the written report. And so there was over... An investigation was conducted. There was evidence from both, obviously both complainants, because this was a cross-complainant situation. There was a complaint about a breach of confidential information from a tenant. That's all right. That's all correct. But you know who writes and who... For example, you can... You're often... The lawyer writes the affidavit, right? And then you get to deposition and you're asked about the affidavit that is written. And it becomes perfectly clear that the person that is being deposed did not write the affidavit and does not say it in that way or even for those reasons. So the report stands as the report. And maybe if your client hadn't testified, if he testified in a way consistent or entirely consistent with the report, you wouldn't have an issue of fact. But he didn't. Your Honor, and Joseph Moore, who gave the testimony that we've been discussing, Your Honor, he did not write the report. I understand that. He did make the decision with two other people. I understand that he didn't write the report, but what you are saying is we should rely on the reasons given in the report. But if you ask the CEO of the company why he fired her, well, I read you what he said. Your Honor, I think we have to disagree about that. And I completely understand. Well, we don't disagree that they gave different reasons. Because we have his testimony and we have the report. Your Honor, I think we disagree about how his testimony plays into the entire factual record. Okay. But I do want to make an important point that I don't think was really covered in the briefs about the reasons. There were four reasons that were stated in the investigative report. And again, the CEO did not participate in that investigation. Who made the decision whether to fire her? There were three individuals. It was HR, and then it was Mr. Moore who did the investigation, and then it was the CEO. Ultimately, it was the CEO. So he made the final decision, right? Correct. They did, Your Honor. No, that's A. The CEO made the final decision. The evidence is that the three did, Your Honor. They all contributed to it. Who made the final decision? No, Mr. James Moore conducted the investigation, and the evidence is that the three of them made the final decision. If when we read the record we don't see that, then we wouldn't be crediting what you're saying. So it's good to put your best foot forward here because as I remember what James Moore, the investigator, said was he was just doing an investigation, giving his recommendation. I don't remember him saying, I made the decision to fire the person. I recommended it. Correct. He did. He did recommend it. But he didn't make the decision to fire the person. Correct. I cannot put my finger on the record. I believe that there is a place in the record that says that the three of them had made the decision. There's no question. I agree with Your Honor. Ultimately, the CEO is going to have the final say. Agreed. But one thing that I don't think is brought up in the briefing very well is that some of these reasons Judge Dillon says, page 7 of her opinion, that Joseph Moore made the final decision to terminate both Sanders and Carter. Yes, Your Honor. I think he did make the final decision. My point is that there were three people involved in this. There was James Moore, Joseph Moore, and then there was the HR representative and they were involved in the termination. Yes, I think there's no question he would ultimately have the final say. Or he did have the final say. Yes, Your Honor. He was the boss man. Yes. Now, the point that I would like to make is that with regards to some of these decisions, the failure to return the coaching form, the tenant complaint, and removing the waiting list, I think that the plaintiff tends to try to diminish these particular factors and to suggest that they're not really bona fide reasons for termination. It does need to be pointed out that this is a highly regulated, federally regulated industry. There were HUD guidelines, you'll see in the record, particularly at page 104 of the Joint Appendix, that the plaintiff had admitted that if she had taken documents that included tenant information from the office that in fact it was a fireable offense and it violated company policy. And this was also at pages 886 and also at 955. And this is really critical. So these are legitimate reasons that came out during the investigation. And that is why she was fired. And this is what's in the investigative report. And that report was adopted by the CEO. Now, in addressing kind of the unique factual issues in this case, I found very helpful the Alvarez vs. Des Moines Bolt Supply Company case. And this is a case out of the 8th Circuit. In that case, the plaintiff had alleged sexual harassment by a co-worker. After she filed her complaint, the co-worker then filed a sexual harassment complaint against her. So we have the same situation across complaints. The company then investigated the complaints and found both of the parties, both the plaintiff and the alleged harasser, guilty of violating company policy. They suspended both with pay and then transferred the co-worker and not the plaintiff. The 8th Circuit upheld the District Court's dismissal of the retaliation claim on summary judgment. And the court pointed out in this case the point that seems very relevant here, which is just because an investigation turns up, an investigation of sexual harassment turns up other legitimate reasons for termination, does not mean that you, does not itself prove retaliation and does not establish a pretext. This is a very unusual situation. I found it interesting that there was this case with very similar facts where the 8th Circuit reached the conclusion that just because you're going to conduct an investigation, you have to conduct the investigation. The investigation here revealed other reasons, they were not retaliatory, they were not pretextual according to the District Court and we believe according to a fair reading of the record and that the issues in terms of posting of the job openings or the offer of the transfer, they were not similarly situated employees and I also want to make sure that the record is clear that Mr. Carter was actually terminated. He was fired. And again, in terms of the posted job openings, this was completely reasonable in light of the fact that she had actually said she tried to resign that very day, November 4, she'd also previously tried to tender her resignation, that was back July, I believe that was in July of 2015 July 27 of 2015 found it Joint Appendix 529 and I think it was, and because they were the only two employees at that particular property, it was reasonable for the employer to decide to post both jobs not just her job, but both jobs. I would be happy to address the default judgment. I think Judge King, you had raised a question about the conduct of the employer in this particular case and there are basically four reasons why the District Court was correct in setting aside the default judgment. And first, this decision is inherently discretionary with the District Court and the District Court considered all of the factors in the Payne case and found that they weighed heavily in favor of setting aside the default judgment so the District Court applied the correct standard. Second, the District Court specifically found the two most important factors in the employer's favor and that's whether there's a meritorious defense, which the District Court said there was and the plaintiff did not contest that. And second, that the party had acted with reasonable promptness and in fact it was 47 days later. Third, in terms of the blames of the parties, the District Court expressly found that the attorney was to blame and that the party, Metropolitan, was blameless. And I think this is probably no better borne out, but in the Joint Appendix, page 60, where counsel himself says literally I am entirely at fault had originally indicated that his strategy was to get admitted into Virginia and... Is that your definition of a good lawyer that dives on the sword? No, Your Honor. And I don't know whether it matters or not on whether it was good lawyering or not. Clearly it was bad lawyering because he let his client get into a default judgment situation. No, but he fessed right up. He fessed right up. He did exactly what he should have done. He did. He did. And then did take some steps to get, when it appeared that he could not get admitted in a timely fashion, he did take steps to connect his client with Virginia counsel. He did. There's no further questions. We would ask that the judgment be affirmed. How big a group is this? Your Honor, it is less than 50 employees. They do have a number of locations. I believe 22 housing properties that they run. All in Virginia? No, I believe that they're also in North Carolina and other And there are usually two employees per location, just like this one. And so when you were talking about, you said 50? Fewer than 50. And how many locations do you think they have? I believe they have 22 locations and they usually have two employees. So not too many people are in the main office? That's correct, Your Honor. It is an unsophisticated operation in terms of kind of running on some small resources both human and... The headquartered there in Roanoke? No, Your Honor. They're headquartered in Washington, North Carolina. Washington, North Carolina? Yes. That's way over in Eastern Park, North Carolina. Yes, Your Honor. So it's fairly widespread. I think the closest location to this one was the one where Tammy Reed came from when they had to fill in during the suspension. There was a location nearby but they are fairly otherwise. And how big are they generally the housing that they supervise? I don't think it's that many, Your Honor. I believe, if I remember correctly, I think it's fewer than 50 units per property. Well underneath that. I think it's a relatively modest operation. Okay. Thank you. Thank you. Judge Keene, picking up on your point, Joseph Moore made the decision to terminate or at least the buck stopped with him and what he said in writing is we're firing you in part because you've had a lustful and flirtatious relationship. That imbues, I don't know, religious angst or something because this organization owns 22 housing units and a church. And services over 1,000 low-income older residents. That's their business. A lustful and flirtatious relationship with the maintenance man. That's why we're letting you go. Walker versus Moducraft, you asked about that, Judge Keene. That was one of my cases that came out of the Western District. Judge Conrad was the judge. I remember Judges Niemeyer and Agee sat on the panel and I can't remember the third judge, but the important point is this court reversed summary judgment and sent that case back for trial and we lost. We lost at trial but we got what we should have had and that is a trial based upon the evidence. So that's the most we can ask of you and we ask that very thing of you here today. The final thing I'll point out is with respect to performance issues, on October 13, 2015 Metropolitan issued a You're the greatest thing since bread. I'm quoting from it. We appreciate your diligent efforts and are excited to maintain a positive working relationship in many months and years to come. That's October 13, 2015 three weeks before she complained of sex harassment and then they said by the way, you've done these six or seven things wrong and also you've complained about sex harassment and that's why we're firing you. As you pointed out, Judges Motz and Keenan, that's a jury question every single time. Thank you for your time. Good morning. Good morning. We will ask our clerk to adjourn court and then we'll come down and say hello to the lawyers. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Robert B. King, Barbara Milano Keenan